# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

                              Plaintiff,

        vs.

NATHAN STRICKLAND,
JOHNNYLEE PRESTON BURK,

                              Defendants.

Case No. 3:15-cr-0088-SLG-DMS

**FINAL REPORT AND
RECOMMENDATION REGARDING
DEFENDANTS' MOTION TO
SUPPRESS (DOC. 46)**

## I.    MOTION PRESENTED

Defendants Nathan Strickland (Strickland) and Johnnylee Burk (Burk) have

moved to suppress the evidence obtained during the September 23, 2015 execution

of a search warrant on a residence in Wasilla, Alaska, authorizing law enforcement

to seize firearms and evidence of marijuana manufacturing. The defendants attack

the validity of the search on several grounds. (Docs. 46; 61). The defendants argue

that they are entitled to a *Franks* hearing because Special Agent Sarah Foreman

(Foreman) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) failed

to inform the issuing magistrate judge that her confidential informant (CI) had five

open, state criminal cases, and that the CI was likely involved in the marijuana

grow operation. (Doc. 46 at 4-6).  The defendants also allege that Agent Foreman

omitted the fact that the property's electrical bill was in Burk's name and paid by

Burk, despite the CI's allegation that the electrical bill was being paid by Strickland

in cash. (Doc. 46 at 13-14). The defendants further contend that the information in

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 1 of 40

the warrant application was stale, and that the informant's information was not sufficiently corroborated. (*Id*. at 6-9).

With regard to the execution, the defendants argue that law enforcement exceeded the scope of the warrant by searching a shed near the residence. (*Id*. 9-10). Finally, the defendants argue that the evidence must be suppressed because law enforcement failed to serve Strickland with a copy of the warrant in violation of Criminal Rule 41(f). (*Id*. at 10-12).

The government opposes. (Doc. 56). The government argues the defendants have failed to allege facts requiring a *Franks* hearing, and the warrant otherwise established probable cause to search the residence. (*Id*. at 4-11; 14-18). With respect to the allegation that Agent Foreman failed to include pending state charges against the CI in the warrant application, the government contends that it has no obligation to confirm the identity of the CI because the defendants failed to offer any support for their theory about the informant's identity. (*Id*. at 15-18). The government also asserts that suppression is in any event inappropriate because law enforcement acted in good faith reliance on a warrant issued by a neutral and detached magistrate judge. (*Id*. at 11-12).

The government further responds that the search of the shed was within the scope of the warrant, and that, because the shed itself was within the curtilage of the residence, law enforcement did not need explicit authorization to search the shed. (*Id*. at 18-20). The government alleges that Codefendant Megan Johnson (Johnson) was given a copy of the warrant at the end of the search, and that any

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 2 of 40

violation of Rule 41(f)'s service requirement does not warrant suppression. (*Id.* at 21-25). In a supplemental opposition, the government asserts that both Burk and Strickland have failed to establish standing to contest the September 23 search. (Doc. 65).

Strickland filed a reply to the government's response, arguing that they had correctly identified the CI and that Agent Foreman's alleged omissions in the warrant applications were both material to a finding of probable cause, and recklessly or intentionally made. (Doc. 60 at 1-3). Strickland also argues that the government has waived its right to present evidence to support its claim that Foreman left a full copy of the warrant with Johnson. (Doc. 60 at 3-4).

Burk filed a supplemental brief regarding his standing to contest the search. (Doc. 81). Burk alleges that he entered into a six-month lease for the residence in September 2014, and that he continued to pay rent and utilities after he was arrested on January 29, 2015. (*Id.*). Although the lease expired by the time of the search, Burk contends that the lease converted into a month-to-month tenancy under state law. (*Id.*). Additionally, Burk asserts that he left personal property at the residence once incarcerated. (*Id.*). On the basis of these facts, Burk argues that he retained a reasonable expectation of privacy in the residence during the September 23, 2015 search. (*Id.* at 2).

The parties have fully briefed their respective positions. The Court took testimony and heard argument on June 21, 2016 and August 19, 2016. (Docs. 82; 87; 88 (sealed); 89 (*ex parte*); 113; 114; 115 (*ex parte*), hereinafter Tr. I; Tr. II; Tr. III; Tr.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                      Page 3 of 40

IV; Tr. V; Tr. VI; Tr. VII respectively for Transcripts). The motion is now ripe for resolution.

## II.     FACTUAL BACKGROUND

### A.  The Search Warrant Application

On September 21, 2015, Agent Foreman applied for a search warrant before Magistrate Judge McCoy to search a residence on East Carefree Drive, in Wasilla, Alaska. (Doc. 46-2). In the portion of her affidavit describing her experience, Foreman asserted that the distribution of controlled substances is often an ongoing enterprise, continuing for months and years, and that the residences of drug traffickers often contain evidence of their illegal activities. (*Id*. at 2-3). Foreman also stated that drug traffickers often possess firearms at their residences to protect their drugs, assets and persons from rival traffickers, other criminals and law enforcement, and that they often receive guns as payments for drugs. (*Id*. at 5-6).

Agent Foreman's affidavit goes onto assert facts, which she believed established probable cause that the Carefree Drive address contained evidence of the manufacture or distribution of a controlled substance and the possession of firearms or ammunition by convicted felons. (*Id*. at 7).  Foreman reported that a CI stated that Strickland has a marijuana grow operation in a shed on the property, and that the CI had personally seen the plants. (*Id*.). The CI also reported that Strickland, a convicted felon, carries a Desert Eagle pistol, and has a rifle in the garage. (*Id*.). Finally, the CI alleged that Strickland pays the electricity bill with cash, and recently paid $3,500 towards the overdue electrical bill. (Doc. 46-2 at 7).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 4 of 40

The CI was described in the application as having begun cooperation with law enforcement for consideration in a pending federal felon in possession case. (*Id*). Agent Foreman said that the CI had previously provided information that led to the seizure of heroin and an arrest, and that other tips provided by the CI had been corrobated by evidence obtained by law enforcement. (Doc. 46-2 at 7). Foreman also related that the CI provided assistance in the recovery of firearms from a group of burglars. (*Id*.). The affidavit described the CI as having state felony convictions for a drug crime and for failing to appear on bail, as well as a misdemeanor conviction for giving a police officer an incorrect name. (*Id*. at 7-8).

Agent Foreman reported that she had conducted a criminal background check on the suspect Strickland, which revealed the Carefree Drive address was his current residence, and that he had felony convictions for larceny and assault. (*Id*. at 8). Foreman further reported that Strickland was arrested at Carefree Drive on August 19, 2015, for driving with a suspended license. (*Id*.).

The affidavit goes onto explain that Agent Foreman had obtained electrical bills for the residence through a grand jury subpoena served on the Matanuska Electrical Association (MEA), and the bills showed that a payment of $3,545.95 was received on August 6, 2015. (*Id*.). Foreman also reviewed power records for the residence, which showed that the residence was consuming an average of 40 to 65 Kilowatt hours (KWH) per day from September 2014 to November 2014, but then began consuming between 125 to 224 KWH per day from November 2014 to August 2015, with the KWH consumed per day increasing on a monthly basis. (*Id*. at 9).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 5 of 40

In addition, Agent Foreman reported that property records revealed the residence to be approximately 4,600 square foot, and that other investigators stated that, in 2013, their 2,070 and 2,876 square foot homes consumed approximately 20 KWH per day. (Doc. 46-2 at 8). Based on this information, Foreman estimated that a typical 4,600 square foot home consumes approximately 60 KWH per day, and the Carefree Drive residence was consuming approximately 164.5 KWH per day over this estimated, typical average. (*Id*.). Foreman stated that marijuana grow operations often use 1000-watt grow lights, which consume approximately 12 KWH per day, each of which can support between 20-25 marijuana plants. (*Id*.). Based on this information, Foreman reasoned that this electrical usage pattern suggested that there were approximately eight 1000-watt grow lights used at the residence. (*Id*.).

The affidavit also reported that, on August 20, 2015, Alaska State Troopers went to the Carefree Drive address to follow-up on a missing person report. (Doc. 46-2 at 7). During this contact, Sgt. Ingram of the Alaska State Troopers (AST) detected the odor of growing or recently harvested marijuana coming from the rear left-side of the property, and observed an outbuilding in the vicinity of the area from which he believed the smell emanated. (*Id*.). Sgt. Ingram had worked for seven years as a member of the Mat-Su narcotics unit, during which he had worked over 100 investigations of commercial marijuana grows. (*Id*.).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                     Page 6 of 40

## B. The Search Warrant

On the basis of Agent Foreman's affidavit, Judge McCoy issued a warrant authorizing law enforcement to search the residence and seize weapons, controlled substances, grow operation equipment and paraphernalia, cellphones and other evidence related to drug trafficking. (Doc. 56-2 at 1-4). The warrant described the property as:

> 4191 E Carefree Dr, Wasilla, described as a single family two story residence, light colored with a black shingled roof. The doors and windows are trimmed in white, and there is an attached car port. Looking up the driveway which led to the garage, the door of the residence is to the right and outbuildings can be seen to the left.

(Doc. 56-2 at 1). The warrant's caption described the warrant as "the Matter of the Search of 4191 E Carefree Dr, Wasilla, AK 99654 and outbuildings." (*Id*).

The warrant ordered law enforcement to give a copy of the warrant and a receipt for any property taken to the person from whom, or from whose premises, the property was taken, or to leave a copy of the warrant and property receipt at the property. (Doc. 56-2 at 1).

## C. The Execution of the Search Warrant on Carefree Drive

Agent Foreman organized a taskforce of approximately 10 law enforcement officers from ATF, Homeland Security Investigations and the Alaska State Troopers to execute the search warrant. (Tr. I at 50-51). At approximately 10 a.m. on September 23, 2015, most members of the task force approached the front door of the Carefree Drive residence on foot,

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 7 of 40

walking on the driveway. (Tr. I at 13-14). As the taskforce members reached the front door, Alaska State Trooper Huckstep (Huckstep) parked his marked patrol vehicle in front of the residence, activated its lights and announced on a megaphone that a search warrant was being executed by law enforcement. (Tr. V at 50-51). Foreman and other agents knocked on the door. (Tr. I at 14). When no one responded, Foreman tested the door handle, and found that it was unlocked. (*Id.*). The agents then entered the residence, announcing that they were police, and ordering the occupants to come out with their hands up. (*Id.*).

The taskforce members contacted and detained eight individuals in the residence, including Nathan Strickland and his codefendant, Megan Jonson. (Tr. I at 157-158). Strickland and two other individuals were detained outside the residence as they exited the residence through the backdoor by Trooper Andrew Ballesteros (Ballesteros) and Sgt. Patrick Nelson (Nelson) of the AST, both of whom were positioned at the back corners of the house. (Tr. I at 100-01; Tr. V at 18-19, 29). It took the task force approximately fifteen minutes to secure the property and detain its occupants. (Tr. I at 14).

Zip ties were initially used to bind the wrists of many of the occupants of the house. (*See* Tr. V at 53, 67). However, Trooper Huckstep carried a number of handcuffs, which he distributed to replace the zip ties. (Tr. V at 53). Many of the detainees were dressed only in underwear, and Huckstep allowed several of them to sit in the backseat of his heated patrol car. (Tr. V

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 8 of 40

at 61). Observing that Johnson was pregnant and zip tied with her hands behind her back, Huckstep provided her with a blanket, removed the zip ties and front-cuffed her with ordinary handcuffs. (*Id.* at 61-62).

The search of the residence led to the discovery and the seizure of a cellular phone, two shotguns, three pistols, ammunition, a Department of Defense contractor ID, two tactical body armor vests, a carbon dioxide generator, four light shields, seven ballasts, harvested marijuana and 366 marijuana plants. (*See* Tr. I at 152). The cellphone, the marijuana plants and grow equipment were seized from a shed near the residence. (Tr. I at 149, 158; Tr. V at 15).

After reading him his *Miranda rights*, Agent Foreman questioned Strickland about his connection to the residence and asked about the ownership of the marijuana grow operation. (Gov.'s Exh. 17 filed at Doc. 108, at approx. 10:00-15:00). Strickland stated that he was living at the property, and claimed ownership of the marijuana grow operation. (*Id.* at approx. 14:30). He however refused to discuss the marijuana grow operation further, stating that he desired legal representation. (*Id.*). In response, Foreman stopped questioning Strickland about the marijuana grow operation. (*Id.*).

At the conclusion of the interview, Agent Foreman asked Strickland whether they could release the residence to Megan, and Strickland responded affirmatively. (Tr. I at 19). Strickland was then arrested on an outstanding warrant unrelated to Foreman's investigation. (*See* Tr. V at 201).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                                    Page 9 of 40

At the initial evidentiary hearing on June 21, 2016, Agent Foreman testified that Strickland never asked to see a copy of the warrant. (*See* Tr. I at 20). However, Trooper Huckstep's testimony, and an audio recording he made during the execution of the search warrant, established that Strickland asked Huckstep for a copy of the warrant, and Huckstep attempted to relay Strickland's request to Foreman through other ATF agents. (*See* Tr. V at 73-76, 85). Contrary to Agent Foreman's initial testimony on the subject, near the conclusion of Foreman's interview of Strickland, Trooper Huckstep can be heard on the tape stating that Strickland desired a copy of the warrant. (Tr. V at 85-92). In response, Foreman stated that she would leave a copy of the warrant with Johnson. (*Id.*).

Agent Foreman left a copy of the warrant with Johnson, including attachment A, which describes a list of the property to be seized, along with a receipt of property taken, before departing the residence.[1] (Tr. I at 24).

### D. Burk's Standing to Contest the Search

At the evidentiary hearing, Burk testified about his standing to contest the search, and called Ernesto Avilla (Avilla) as a witness. (Tr. VI at 30-73). Avilla testified that he is the owner of the Carefree Drive property, and leased the property to Burk beginning on September 2, 2014. (*Id.* at 31). At

---

[1] Agent Foreman took a photograph of the copy of the warrant and property receipt at the conclusion of the search. (Tr. I at 125). At the evidentiary hearing, Strickland maintained that Foreman failed to include Attachment A with the copy of the warrant left with Johnson, noting that Attachment A is not depicted in Foreman's photograph. (*See* Tr. I at 64, 68). The Court concludes that Foreman testified truthfully and accurately when she stated that Attachment A was stapled behind the copy of the warrant left with Johnson. (Tr. I at 64, 71, 84).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 10 of 40

the time he entered into the lease with Burk, Avilla had been recently

convicted of felony drug and theft charges, and was serving a prison sentence.

(*Id*. at 36-39). He did not meet Burk before signing the lease, and, as of the

date of the evidentiary hearing, he had never met Burk. (*Id*. at 37).

Avilla acknowledged that Burk's lease was for a term of six months,

however he stated that it was his understanding that Burk remained a

tenant of the Carefree Drive property through September 2015. (*Id*. at 35).

After hearing that Burk had been incarcerated, Avila arranged to have his

cousin receive rent from Strickland. (*Id*. at 42-45). In Avila's mind,

Strickland's delivery of the rent checks amounted to a continuation of Burk's

tenancy on a month-to-month basis. (Tr. VI at 44-46).

Burk testified[2] that his attorney facilitated the signing of the original

six-month lease for the Carefree Drive property. (*Id*. at 53). Burk said he

continued to make monthly rental payments through Strickland after he was

incarcerated on January 29, 2015. (*Id*. at 57-58). While incarcerated, Burk's

furniture, two dogs, vehicles and other possessions remained at the residence.

(*Id*. at 55-57, 68).

### E. Agent Foreman's Understanding of the Service Requirement of Criminal Rule 41(f)

At the evidentiary hearing on June 21, 2016, Agent Foreman testified

that she regularly executes search warrants as part of her duties as a special

---

[2] When testifying, Burk acknowledged that he had felony convictions for vehicle theft and misconduct involving a controlled substance. (*Id*. at 58).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 11 of 40

agent of the ATF. (Tr. I at 4-5). Foreman began working for the ATF in May 2010, after completing the ATF's criminal investigator training program. (*Id*.). Foreman testified that she has learned through on the job training to leave a copy of the search warrant, along with a receipt for the property taken, with the owner of the property searched, or, if the owner is not present, to leave a copy of the warrant on the premises. (Tr. I at 4-6). She was further instructed to photograph the copy of the warrant served at the scene of the search (*Id*. at 5). She testified that she had never been instructed that it is necessary to serve the warrant at the beginning of a search. (*Id*. at 7-8).

Sgt. Nelson, Trooper Ballesteros and Trooper Huckstep each testified that they always secure the scene of the premises to be searched before serving the warrant. (*See* Tr. I at 8-9, 94-95; Tr. V at 8-9, 42-43). All of these witnesses maintained that this practice is done to ensure officer safety, and make certain that no one is hiding on the premises. (*Id*.). None of the law enforcement witnesses believed that a warrant must be served on an occupant prior to beginning a search and securing the scene. (*Id*.).

At the continued evidentiary hearing on August 18, 2016, Agent Foreman related that she had reviewed her training materials and discovered a document instructing her that the Ninth Circuit requires law enforcement to serve a copy of the search warrant prior to commencing the search when there is no justifiable reason for delaying service. (Tr. VI at 9). The training material further stated that it is the best practice to serve the warrant prior

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 12 of 40

to beginning the search when circumstances permit. (*Id.*). Foreman testified that she had forgotten about this aspect of her training, and that she has never seen a federal agent serve a warrant prior to beginning a search during her tenure as an ATF agent. (*Id.* at 9-10).

### F. Agent Foreman's Knowledge about Burk's Payments of the Electrical Bills

At the initial evidentiary hearing, the government introduced the Matanuska Electrical Association records that Agent Foreman referenced in her affidavit in support of the application for a search warrant. (Tr. I at 32, 142-47). The MEA bills list Burk as the account holder, and show that a $900.00 payment was made towards a balance of $1,878.84 on May 26, 2015, and that a second payment of $3,545.95 in satisfaction of the outstanding balance was made on August 6, 2015. (Tr. I at 146-147). The bills do not state by whom or how the payments were made. (*See id.*). Foreman obtained these records on September 11, 2014, prior to the execution of the search warrant. (*Id.* at 89).

Agent Foreman later learned, through a review of jail calls made by Burk, that Burk called his mother while incarcerated and had her facilitate the August MEA payment from his bank account. (*Id.* at 89-91; Tr. III at 25-26; Doc. 92 (sealed)). Although Burk discussed the payments with his mother in the first week of August 2015, Foreman did not review these calls until September 30, 2015, after the warrant was executed. (*See id.*).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 13 of 40

# III.  DISCUSSION

## A. Strickland Has Standing to Contest the Search

A defendant seeking to exclude evidence allegedly obtained from a violation

of the Fourth Amendment has the burden of demonstrating that he has standing to

contest the search. *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005). That

is, to invoke the protections of the Fourth Amendment, a defendant must show that

he had a reasonable expectation of privacy in the area searched. *United States v.*

*Nerber*, 222 F.3d 597, 599 (9th Cir.2000). Standing is a threshold issue, and a Court

cannot proceed with a Fourth Amendment analysis until the defendant has

established standing to contest the search. *United States v. Singleton*, 987 F.2d

1444, 1449 (9th Cir. 1993).

At the evidentiary hearing, the government conceded that Strickland has

standing to contest the September 23, 2015 search of the Carefree Drive residence.

(Tr. I at 27). The government's concession is well-founded. Evidence submitted by

the government established that Strickland was present for the September 23

search, and was lawfully residing at the Carefree address at the time of the search.

(*See* Tr. I at 34). It is axiomatic that lawful residents of a house are protected by the

Fourth Amendment and have standing to contest the search of their home. *See*, *e.g.*,

Georgia *v. Randolph*, 547 U.S. 103, 124 (2006) (Stevens, J., concurring).

## B. Burk Has Standing to Join in Part of Strickland's Motion

At the time of the September 23 search, Burk had been continuously

incarcerated since January 29, 2015. (Tr. VI at 57-58). Relying on the Ninth

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 14 of 40

Circuit's decision in *United States v. Silva*, the government argued that Burk has no standing to join in Strickland's motion to suppress to the extent that it argues law enforcement violated Criminal Rule 41(f) by failing to serve Strickland with a copy of the search warrant, and for failing to serve a copy of the search warrant before commencing the search. 247 F.3d 1051, 1059 (9th Cir. 2001).

In *Silva*, the Ninth Circuit held that a defendant who was in prison at the time of a search had no standing to challenge an officer's failure to leave a copy of the warrant with the defendant's wife when the warrant was executed. *Id.* at 1057-59. The Ninth Circuit reasoned that the requirement that law enforcement present the warrant to a property's owner at the time of the search is designed to provide assurance and notice to the property owner during the search. *Id.* Because a defendant not present at the time of a search cannot benefit from the assurances provided by receiving a copy of the warrant, the court reasoned that they have no standing to contest a failure to present the warrant under the general rule that Fourth Amendment rights cannot be asserted vicariously. *Id.*

As in *Silva*, Burk was incarcerated at the time of the search. Accordingly, this Court concludes he has no standing to join in Strickland's motion to the extent it argues that law enforcement violated the presentment requirement.

The Court however concludes that Burk has standing to join in the remainder of Strickland's motion to suppress because he had a lawful possessory interest in the Carefree Drive property despite his incarceration. Defendants are deemed to have a reasonable expectation of privacy sufficient to establish Fourth Amendment

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 15 of 40

standing where they have a substantial possessory interest in the house searched. *Rakas v. Illinois*, 439 U.S. 128, 136 (1978) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Likewise, the Ninth Circuit has held that "a defendant has a reasonable expectation in property searched if he can demonstrate a formalized, ongoing arrangement ... that indicates joint control over the place searched." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1028 (9th Cir. 2010) (internal citation and quotation marks omitted).

On the other hand, the Ninth Circuit concluded in *United States v. Sarkistan* that a defendant lacked standing to challenge the search of a storage unit, which he was authorized to access, because he never used the unit, asserted ownership of the items stored in the unit or produced any evidence of having paid any part of the rental fee for the unit. 197 F.3d 966, 987-88 (9th Cir.1999).

Similarly, in *United States v. Reyes-Bosque*, the defendant argued he had standing to contest the search of an apartment because he possessed keys to the apartment, had delivered rent for the apartment to the landlord and had an electrical bill for the apartment in his own residence. 596 F.3d at 1028-29. The Ninth Circuit rejected these arguments and found that the defendant had no standing. *Id*. The court reasoned that physically giving the landlord a rent payment is insufficient to establish a legitimate expectation of privacy. *Id*. at 1029. Likewise, the court concluded that mere possession of keys was insufficient to establish standing, and that the defendant's possession of the electric bill was, in isolation,

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                          Page 16 of 40

insignificant because the defendant was not listed as the customer on the bill. *Id*. at 1028-29.

Here, the evidence presented by Burk establishes that he maintained an expectation of privacy in the residence due to his payment of rent, the utility bill and his storage of personal belongings during his period of incarceration. The evidence presented by Burk and the government establishes that Burk initially leased the Carefree Drive residence on September 2, 2014 for a period of six months. (Tr. VI at 31). Although the lease expired on March 2, 2015, Avilla, the landlord, believed that the tenancy begun by Burk continued on a month-to-month basis even after Burk became incarcerated. (Tr. VI at 44-46).

At the evidentiary hearing, the government elicited testimony establishing that the lease contained no provision for a month-to-month tenancy after the expiration of the initial term of 6 months. (Tr. VI at 40-42). However, under the Uniform Residential Landlord and Tenant Act as adopted by the State of Alaska, a renter's tenancy continues on a periodic basis after the expiration of a lease if the landlord accepts additional payments of rent from the tenants. *See* Alaska Stat. §§ 34.03.290(c), 34.03.020(d); *Alaska State Hous. Auth. v. Contento*, 432 P.2d 117, 123 (Alaska 1967) (holding that a month-to-month tenancy at will was established after the expiration of a five year lease, where tenants continued to pay rent but never executed the new lease proffered by landlord); *see also* 49 Am. Jur. 2d Landlord and Tenant § 287. The Court finds Burk testified truthfully when he stated that he continued to pay rent after his incarceration. The Court also finds that Burk

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                           Page 17 of 40

continued to pay the residence's electric bills even after his incarceration. (*See* Tr. I at 89-91; *see also* Tr. III at 25-26; Doc. 92 (sealed)). Although Burk could not, as a practical matter, exercise control over the property due to his incarceration, it is clear that he retained a possessory interest, and therefore a reasonable expectation of privacy in the residence. *Cf. Reyes-Bosque*, 596 F.3d at 1028-29.[3]

## C. The Alleged Omissions in the Warrant Application Do Not Warrant a *Franks* Hearing

Strickland and Burk argue that Agent Foreman's (1) failure to include information about the pending state charges against the informant in the affidavit, and (2) her failure to inform the issuing magistrate judge that Burk was listed as the account holder on the MEA electrical bills were reckless or intentional omissions that require the holding of a *Franks* hearing and the suppression of the evidence in this case. (Doc. 46 at 4-14). They also argue that Foreman failed to disclose that the CI may have been involved in the grow operation. (Doc. 46 at 4-6).

Under the Supreme Court's holding in *Franks v. Delaware*, 438 U.S. 154 (1978) as construed by the Ninth Circuit, a defendant must meet five requirements to obtain an evidentiary hearing to challenge a facially-valid warrant:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the

---

[3] Burk's case is distinguishable from *Reyes-Bosque*, where the Ninth Circuit found the defendant to lack standing to contest the search of an apartment because there was no evidence he had paid rent for the apartment or was responsible for apartment's utilities. *Id*. It is likewise distinguishable from *Sarkisian*, in which the defendant was found to have no standing to contest the search of a storage unit that he was permitted to access, where there was no evidence that he had used the storage unit or ever paid any part of the storage fees. 197 F.3d at 987-88.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                        Page 18 of 40

allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*United States v. Dicesare*, 765 F.2d 890, 895 (9th Cir.1985).

Once a defendant has made a substantial showing that an affidavit supporting a warrant contains reckless or intentional false statements or omissions, the Court must determine whether the alleged omissions are material to a finding of probable cause. *United States v. Garcia–Cruz,* 978 F.2d 537, 541 (9th Cir.1992). Omissions and false statements are immaterial to the warrant if the affidavit would still support probable cause once the false statements are removed and the omissions added. *Id*. The Court must consider the effect of the misrepresentations and omissions in the affidavit cumulatively and not in isolation. *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985).

The rule that an affiant may not omit facts material to a finding of probable cause does not require the affiant to provide information about every possible theory that might tend to negate probable cause. *United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008).

Under *Franks*, it is the veracity of the affiant, and not his or her informant, that matters. *Franks*, 438 U.S. at 171. However, when an informant's information is relied upon in a probable cause affidavit, the affiant must provide the magistrate judge with information about the basis of the informant's knowledge, and reveal information bearing on the credibility of the informant. *Id*. at 165.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                           Page 19 of 40

### a. The Affidavit Provides Probable Cause that the Residence Contained a Marijuana Grow Operation and Firearms Even if All the Alleged Inaccuracies Were Corrected and the Alleged Omissions Included

Here, all of the alleged omissions and inaccuracies are immaterial to a finding of probable cause because Sgt. Ingram's detection of the odor of marijuana from the residence and the electrical usage information obtained by Agent Foreman provide probable cause that the premises contained a marijuana grow operation.

Under Ninth Circuit law, the fact that a law enforcement agent familiar with the smell of marijuana has detected the odor of marijuana at a residence is, by itself, sufficient to establish probable cause that the house contains marijuana. *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973) (per curiam); *see also Lingo v. City of Salem*, No. 14-35344, 2016 WL 4183128, at *6 (9th Cir. Aug. 8, 2016) (the combination of the marijuana odor and the fact that the plaintiff did not have a medical marijuana card provided probable cause that the plaintiff had committed a crime) (citing *State v. Derrah*, 191 Or.App. 511, 84 P.3d 1084, 1087 (2004) ("The scent of marijuana, emanating from a residence, without more, is sufficient to support a conclusion that marijuana will likely be found inside that residence.")); *Johnson v. United States*, 333 U.S. 10, 13 (1948) (odor of opium sufficient to establish probable cause); *c.f. United States v. Tate*, 694 F.2d 1217, 1221 (9th Cir.1982) (holding that the smell of ether by itself does not establish probable cause that a crime has been committed because ether has legitimate uses.).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 20 of 40

Agent Foreman's affidavit includes the statement that Sgt. Ingram, a state trooper that had investigated over 100 marijuana grows as a member of the Mat-Su narcotics unit, detected the odor of growing or recently harvested marijuana emanating from an outbuilding on the Carefree Drive premises. (Doc. 46-2 at 7). This allegation, by itself, is sufficient to establish probable cause that the premises contained marijuana. *United States v. Barron*, 472 F.2d at 1217. Because the possession or cultivation of marijuana is illegal under federal law for all purposes, *see*, *e.g.*, *Wilson v. Lynch*, No. 14-15700, 2016 WL 4537376, at *11 (9th Cir. Aug. 31, 2016), Sgt. Ingram's detection established probable cause that the residence contained evidence of a violation of federal drug laws, *see Lingo*, 2016 WL 4183128, at *6.

Accordingly, all of the alleged omissions and inaccuracies in the affidavit— the informant's pending state charges, his or her possible involvement in the grow operation, the fact that Burk was the only user listed on the utility bill and the fact that Burk was paying the electrical bill through bank transfers—are immaterial to a finding of probable cause that the Carefree Drive premises contained a marijuana grow operation.

Further, Sgt. Ingram's observations were corrobated by the unusually high electrical usage patterns at the residence, which Agent Foreman concluded could be attributable to a marijuana grow operation capable of supporting up to 200 marijuana plants. (*See* Doc. 46-2 at 9); *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975); *United States v. Clark*, 31 F.3d 831, 835

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                                    Page 21 of 40

(9th Cir. 1994) ("The electricity usage was insufficient to establish probable cause, but it was not irrelevant to that determination; the affidavit asserted that usage was high and that marijuana growers used large amounts of electricity.").

The search warrant also authorized law enforcement to search for evidence of possession of firearms or ammunition by felons, (Doc. 46-2 at 11-12), and the execution of the search warrant also resulted in the seizure of various firearms and ammunition, (Doc 46-3 at 2).

Assuming, *arguendo*, that the informant's tips should be excised from the warrant as uncorroborated or untrustworthy, Agent Foreman's affidavit stated that in her experience "[i]t is common for members of drug trafficking organizations to possess firearms and ammunition to protect their drugs, assets and persons from rival traffickers, other criminals and from law enforcement." (Doc. 46-2 at 5-6). This assertion, alongside the evidence establishing probable cause that the residence contained a commercial marijuana grow operation, was by itself sufficient to establish probable cause that the residence might contain weapons.[4] *See United States v. Castillias*, 189 Fed.Appx. 603, 604 (9th Cir. 2006) (concluding that it is reasonable to infer possession of firearms from evidence of drug trafficking, and

---

[4] Under the plain view doctrine, officers may seize evidence of a crime if the officers are lawfully positioned when they discover the evidence and the incriminating nature of the evidence is apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Although the record was not developed in this regard, it appears that the firearms would have been discovered in the course of searching for evidence of a marijuana grow operation pursuant to the warrant. Because law enforcement was aware that Strickland was a felon and the guns were discovered at a property housing a marijuana grow, the incriminating nature of the guns would have been apparent, and seizure of the guns would have been lawful under the plain view doctrine. *See Horton v. California,* 496 U.S. 128, 142 (1990) (holding that firearms were lawfully seized during the execution of warrant authorizing search for proceeds of an armed robbery under the plain view doctrine).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                        Page 22 of 40

that a magistrate judge properly issued a warrant authorizing seizure of firearms where affidavit in support of the warrant application contained facts providing probable cause of drug trafficking along with a statement that the affiant believed that firearms were likely present along with the drugs) (citing *United States v. Reese*, 775 F.2d 1066, 1074 n. 5 (9th Cir.1985) (stating that it is proper for magistrate judges to consider an officer's statement that narcotic dealers frequently possess weapons in determining probable cause) and *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991) (holding that evidence of possession of a controlled substance is relevant to the issue of whether a defendant knowingly possessed a weapon found near narcotics)); *see also United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004) (holding that evidence that firearms were kept in easy reach of a defendant's stash of drugs and drug trafficking paraphernalia sufficient to support a conviction for possessing firearms in furtherance of a drug trafficking crime).

For the above reasons, the defendants' request for a *Franks* hearing is denied, and the Court recommends that the District Court deny the defendants' motion to the extent it seeks the exclusion of evidence pursuant to *Franks*.

### D. Agent Foreman is Admonished for Failing to Provide a Complete Criminal History of The Informant

The defendants argue that the warrant in this case must be analyzed under *Franks* without the CI's statements because Agent Foreman omitted the fact that the CI had recently been charged in five separate state cases and because the statements were uncorroborated. (Doc. 46-2 at 5-6). The defendants also allege that

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 23 of 40

the CI was personally involved in the grow operation, and that this fact should have been included in Foreman's warrant application. (Doc. 46 at 4-6).

The Court concludes that Foreman failed to include the fact that the CI had five pending state criminal cases, in which he was facing three charges of misdemeanor driving with a suspended license, along with charges of misdemeanor assault, misdemeanor theft and violating the conditions of his pre-trial release.[5]

The Court admonishes Agent Foreman to include the complete history of her informants—including the status of any pending criminal charges against the informants in state or federal court—in search warrant applications in the future.

With that said, the Court concludes the omitted criminal charges would not have affected Magistrate Judge McCoy's probable cause determination. As noted *supra,* when a defendant alleges that evidence must be suppressed under *Franks* because a law enforcement affiant omitted portions of an informant's criminal history, courts analyze whether the omitted information would have affected the outcome of the magistrate judge's probable cause determination. *See United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000).

In assessing whether a confidential informant's tip should be given weight in a warrant application, courts utilize the *Illinois v. Gates* test, which directs courts to

---

[5] In a sealed proceeding, Strickland's counsel provided his reasons for believing that he had determined the identity of the CI in this case, and that Agent Foreman had omitted the fact that there were five pending state cases against the CI at the time of the warrant application. (Tr. III at 7 (sealed); see also Tr. IV (sealed)).

At an ex parte hearing, the government confirmed that the defense had correctly identified the informant, which in turn confirmed the defense's allegation that Foreman had failed to disclose the fact that the CI had six pending charges in state court. (See Tr. VII (sealed, ex parte)).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                        Page 24 of 40

look to the totality of the circumstances, focusing on the informant's veracity, reliability and his basis of knowledge. 462 U.S. 213, 238 (1983). Specifically, courts focus on (1) whether the informant is known to the police, (2) whether the informant has a track record of reliability, (3) the informant's basis of knowledge, and (4) whether the informant "provides detailed predictive information about future events that is corroborated by police observation." *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006). With regard to the fourth factor, it should be noted that "[m]ere confirmation of innocent static details [. . .] does not constitute corroboration." See *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (internal citation and quotations marks omitted).

Viewed in light of the totality of the circumstances, the CI's statements were sufficiently trustworthy, even with the omitted criminal history included. The CI was a known informant, who had previously provided information leading to the seizure of heroin and an arrest, and had provided other information in active cases that had been corrobated by law enforcement. (Doc. 46-2 at 7). Foreman stated that the informant had viewed the marijuana plants himself, (46-2 at 6), establishing a strong basis of knowledge with respect to his/her allegations that the residence contained a grow operation.

The CI further provided detailed information about future events: the operation of an ongoing marijuana grow contained in a shed at the Carefree Drive residence, with plants at various stages of maturity. (Doc. 46-2 at 7). The ongoing criminality was corroborated by Sgt. Ingram's detection of a marijuana odor

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 25 of 40

emanating from the vicinity of one of the outbuildings, and the subpoenaed MEA records, showing that the residence was consuming an unusually high amount of electricity consistent with a large scale marijuana grow operation. (*Id*. at 7-9).

The omitted pending charges of driving with a suspended license, misdemeanor theft, misdemeanor assault and violating the conditions of pretrial release are not crimes of dishonesty. Crimes not involving dishonesty generally do not bear on an informant's credibility. *Cf. Reeves*, 210 F.3d at 1045 ("Any crime involving dishonesty necessarily has an adverse effect on an informant's credibility."). None of the omitted charges involve crimes, the nature of which, would suggest that the CI was inclined to frame an innocent person. *See United States v. Patayan Soriano*, 361 F.3d 494, 507 (9th Cir. 2004) (concluding that informant's conviction for forgery, a crime of dishonesty, did not suggest the possibility that the informant would frame an innocent person and holding that omission of the forgery conviction from the warrant application did not require suppression of evidence seized).

Agent Foreman disclosed that the informant was actively cooperating with ATF, seeking leniency in relation to a pending federal felon in possession case, and that he or she had previously been convicted of the state felonies of misconduct involving controlled substances in the fourth degree and failing to appear while on felony bail. (Doc. 46-2 at 7). Foreman also disclosed that the informant had been convicted of a crime of dishonesty—failing to file a false report—for having lied about his identity to a law enforcement officer. (*Id*.).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 26 of 40

Compared to the information bearing on the CI's credibility that was included in the affidavit, Foreman's omission of the six pending state misdemeanors were unlikely to have significantly impacted the magistrate judge's analysis of the informant's credibility.

Finally, the fact that the informant may have been personally involved with the grow operation would not have detracted from a finding of probable cause. The CI's involvement with the grow operation would suggest that he/she had an unimpeachable basis of knowledge for his tip—direct, personal involvement in the criminal enterprise being investigated. Secondly, his involvement would render his tips self-inculpatory, a circumstance that the Ninth Circuit views as supporting an informant's credibility.[6] *See Patayan Soriano*, 361 F.3d at 506.

## E. The Information in the Warrant Application Was Not Stale

The defendants also contend that information about Sgt. Ingram's detection of the marijuana odor on August 20, 2015, and the electrical data ending with an August 2015 reading, was stale because the warrant was issued on September 21,

---

[6] Additionally, with regard to Burk's argument that a *Franks* hearing is required because Agent Foreman failed to disclose that Burk was the listed account holder on the Matanuska Electrical Association electrical records, the Court concludes that this information was irrelevant to a finding of probable cause. The fact that Burk was the account holder does not contradict the CI's assertion that Strickland was currently paying the electricity bill.

Likewise, the fact that the CI stated that Strickland was paying the electricity bill in cash, when, in fact, the electricity bill was being paid by Burk through bank transfers is not attributable to Agent Foreman and therefore irrelevant under *Franks. See United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) (citing *Franks*, 438 U.S. at 171). Foreman did not learn that it was Burk who had made the May and August 2015 payments to MEA until after the search warrant was executed. *See* Section II(F), *supra*.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 27 of 40

2015. (Doc. 46 at 8-9). Similarly, the defendants assert that the CI's tips were not specific as to time and date, and thus should be viewed as stale or irrelevant. (*Id.*).

This argument is without merit. Agent Foreman's affidavit stated that, in her experience, the distribution of controlled substances is often a continuing enterprise, continuing for months and years. (Doc. 46-2 at 2-3). The Ninth Circuit has acknowledged that marijuana grow operations are long-term, ongoing criminal enterprises. *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). The Ninth Circuit has held that two-year-old information tending to establish probable cause that a premise contains a marijuana grow operation is not stale. *Id.* Here, the electrical data and Sgt. Ingram's observations were gathered approximately a month before the search warrant was obtained. This information was not stale.

Agent Foreman's affidavit states that the CI related that "STRICKLAND is operating a marijuana grow in the shed on the property." (Doc. 46-2). Foreman's use of the present tense implies that the CI reported to her that there was, around the time of the warrant application, a marijuana grow operation on the premises. While it is true that the affidavit does not state when the informant saw the plants, a court reviewing a warrant is to defer to the magistrate judge's determination of probable cause and must acknowledge that the determination involves a practical, common sense, fluid and nontechnical mode of analysis. *See United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006). Construed in a common sense fashion, Foreman's affidavit implies that the she believed that the CI had viewed the marijuana plants recently.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                          Page 28 of 40

## F. Law Enforcement Did Not Exceed the Scope of the Warrant in Searching the Residence's Outbuildings

The defendants argue that law enforcement exceeded the scope of the warrant by searching the shed near the residence where the marijuana grow was discovered. (Doc. 46 at 9-10). As noted, *supra*, the property to be searched is described in the warrant as:

> 4191 E Carefree Dr., Wasilla, described as a single family two story residence, light colored with a black shingled roof. The doors and windows are trimmed in white, and there is an attached car port. Looking up the driveway which led to the garage, the door of the residence is to the right and outbuildings can be seen to the left.

(Doc. 56-2 at 1).

The defendants argue that this language limits law enforcement to searching the residence itself. (Doc. 46 at 9-10). The Court agrees that this language is ambiguous, and, arguably, the reference to the "outbuildings [that] can be seen to the left" is only further identification of the home to be searched. (*Id*.). However, any ambiguity is resolved by the caption of the warrant, which specifies that the warrant pertains to "the Search of 4191 E Carefree Dr, Wasilla, AK 99654 and outbuildings." (Doc. 56-2 at 1). Courts have concluded that the caption of a warrant is an essential part of the warrant. *United States v. Thomas*, 216 F. Supp. 942, 945 (N.D. Cal. 1963) (citing *United States v. Nestori*, 9th Cir., 10 F.2d 570).

Courts must construe warrants liberally because "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001) (internal citation and quotation marks

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                      Page 29 of 40

omitted). When a liberal reading is required, a reviewing court must ensure that a warrant purporting to authorize the search of multiple areas was issued upon probable cause as to each location to be searched. *Id.*

Here, the affidavit in support of the warrant clearly establishes probable cause to search the shed where the marijuana grow was discovered. Sgt. Ingram is described as having detected the odor of marijuana coming from the "the back left side of the property" in the vicinity of an outbuilding, (Doc. 46-2 at 8), while the warrant describes the residence as having outbuildings on the left side of the property, (Doc. 56-2 at 1). Construing the language of warrant in this case in a commonsense fashion, it is clear that the warrant authorizes the search of outbuildings near the residence.

## G. The Court Is Unable to Conclude that the Shed Was Within the Residence's Curtilage

Citing to *United States v. Dunn*, 380 U.S. 294 (1987), the government argues that, even if the warrant did not explicitly authorize the search of outbuildings on the property, the shed was located within the residence's curtilage and therefore a separate warrant is not required. Whatever the merit of this argument, this Court is unable to determine whether or not the shed was located within the residence's curtilage based on the existing record.

The Ninth Circuit has instructed courts to look to the following factors to determine whether an area is part of a home's curtilage: (1) the area's proximity to the home, (2) whether the area is included within an enclosure surrounding the home, (3) **whether the area is being used for the intimate activities of the**

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 30 of 40

**home**, and (4) the steps taken by the resident to protect the area from observation

by passersby. *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996) (emphasis

added). Over the course of a two-day evidentiary hearing, the government called a

number of law enforcement witnesses that participated in the execution of the

warrant. However, none of these witnesses testified regarding the exact location or

appearance of the shed. Likewise, little testimony was given about the layout of the

property in general. The Court further notes that the Ninth Circuit does not view

marijuana grow operations as "intimate activities of the home[.]" *United States v.

Davis*, 530 F.3d 1069, 1079 (9th Cir. 2008). The Court is unable to determine

whether the shed was within the curtilage of the Carefree Drive residence based on

the existing record.

### H. Law Enforcement Did Not Violate *Groh v. Ramirez*

In his motion to suppress, Strickland[7] argues that law enforcement violated

the Supreme Court's holding in *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) by failing

to serve Strickland a copy of the warrant upon request. (Doc. 46 at 11-12).

Strickland argues that because he was never served a copy of the warrant, he has

no way of knowing whether law enforcement possessed a copy of Attachment A to

the warrant, which describes the items to be seized during the search. (*Id*.).

Strickland argues that this amounts to a violation of *Groh*, requiring suppression of

the evidence seized. (*Id*.).

---

[7] As explained in Section III(B), *supra*, Burk has no standing to join in this portion of Strickland's
motion.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 31 of 40

Strickland's *Groh* argument fails for two reasons. First, *Groh* held that a search warrant is invalid when it fails to describe the type of evidence to be seized. 540 U.S. at 557. Here, the parties do not dispute that Attachment A to the warrant adequately described the evidence to be seized, and this Court has concluded that Agent Foreman possessed copies of the warrant at the scene that included Attachment A, one of which was served on Johnson at the end of the search. Section II(B), *supra*.

Second, Strickland's argument that, because he was never served with the warrant, he has no way of knowing whether law enforcement possessed Attachment A at the time of the search appears to be premised on the now overruled Ninth Circuit holdings concluding that the purpose of the presentment requirement is to allow the targets of search warrants to police the executing officers' conduct during the search. *See United States v. Grubbs*, 547 U.S. 90, 98 (2006).

In *United States v. Grubbs*, the Supreme Court overruled this precedent, holding that the Fourth Amendment does not give the targets of search warrants "license to engage the police in a debate" about the warrant, but instead guarantees a right to suppress improperly obtained evidence. *Id*.

## I. The Failure to Present the Warrant to Strickland Violated *United States v. Gannt* But Suppression Is Not Warranted

Strickland also argues that the evidence seized must be suppressed because law enforcement violated the Ninth Circuit's holding in *United States v. Gannt*. (*See* Doc. 46 at 11). In *Gannt*, the court held that the failure to present the defendant with a copy of the warrant at the outset of the search requires suppression where

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                           Page 32 of 40

the defendant was not given a copy of the warrant until hours after she initially requested a copy. *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir. 1999) *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). Interpreting Criminal Rule 41(f)'s[8] requirement that law enforcement serve a copy of the warrant on a property owner if the owner is present for the search, the Ninth Circuit concluded that law enforcement must present a person with a complete copy of the warrant at the outset of the search in the absence of exigent circumstances. *Id*. Relying on United States Supreme Court precedent in *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991) and *Michigan v. Tyler*, 436 U.S. 499, 508 (1978), the Ninth Circuit held that:

> If a person is present at the search of her premises, agents are faithful to the "assurance" and "notice" functions of the warrant only if they serve the warrant at the outset of the search. A warrant served after the search is completed cannot timely "provide the property owner with sufficient information to reassure him of the entry's legality."

*Gantt*, 194 F.3d at 991 (quoting *Michigan*, 436 U.S. at 508).

The evidence heard on this motion establishes that despite Strickland's explicit request for a copy of the warrant, he was questioned, arrested and transported from the scene without ever having been given an opportunity to view a copy of the warrant. (*See* Tr. V at 73-76, 85). Codefendant and housemate Johnson

---

[8] Criminal Rule 41(f)(1)(C) states that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                                    Page 33 of 40

was, however, served with a copy of the warrant. There are no cases establishing that law enforcement is required to serve multiple copies of the warrant where there are multiple persons present during the execution of a warrant.

Nevertheless, Johnson was not served with a copy of the warrant until after he was questioned and the search was complete in violation of *Gannt*. (Tr. I at 24). While the law enforcement witnesses in this case testified that they always first secure the scene when executing a warrant out of a concern for officer safety, (*see* Tr. I at 8-9, 94-95; Tr. V at 8-9, 42-43), this practice did not justify waiting until the end of the search to serve Johnson with a copy of the warrant. There do not appear to have been any exigent circumstances preventing the officers from serving at least one copy of the warrant, once the scene was secured and all persons present were detained.

The Court notes that there is an open question whether the ruling in *Gannt* has been overruled by the Supreme Court's holding in *United States v. Grubbs*, which rejected the notion that law enforcement is required to serve a copy of the warrant before beginning their search. *See United States v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2007) (declining to decide whether *Grubbs* has overruled *Gannt*). Even assuming that *Gannt* survives *Grubbs*, the Court finds that suppression would not be warranted.

The *Gannt* court acknowledged that violations of the presentment requirement usually do not demand suppression. *Gantt*, 194 F.3d at 1005. Under pre-*Grubbs* Ninth Circuit law, violations of *Gannt* did not require suppression

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 34 of 40

unless the executing officers were actually aware that Rule 41(f) requires serving a copy of the search warrant at the outset of the search and disregarded the rule in bad faith, or where the defendant was actually prejudiced by the violation. *United States v. Williamson*, 439 F.3d 1125, 1134 (9th Cir. 2006).

During the second evidentiary hearing, Agent Foreman testified that she had received training instructing that the Ninth Circuit requires service of the search warrant at the outset of the search, but had forgotten it. (Tr. V at 9-10). At the initial hearing, she had insisted adamantly that, based on her experience, there was no requirement that the warrant be served at the outset of a search. Both the face of the warrant and Rule 41(f) itself only instruct law enforcement to leave a copy of the warrant (Doc. 56-2 at 1). While it is disappointing that Agent Foreman forgot her training, her testimony at the second evidentiary hearing appeared credible.

There is no evidence on the record suggesting that Agent Foreman or the other officers[9] were aware of the rule in *Gannt* at the time the warrant was served. Accordingly, the Court cannot find that Foreman deliberately violated *Gannt* in bad faith. *Williamson*, 439 F.3d at 1134.

No evidence was presented that Strickland was prejudiced by Agent Foreman's failure to show him the warrant. At oral argument, Strickland's counsel asserted that Strickland would not have admitted to ownership of the grow

---

[9] The state troopers who testified all stated that they were unaware of any requirement that they serve the copy of the warrant at the outset of the search. (*See* Tr. I at 98; Tr. IV at 8-9, 43). Foreman testified that she was not aware of any federal law enforcement officer who has ever served a copy of the warrant at the outset of the search. (Tr. VI at 9-10).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 35 of 40

operation during the *Mirandized* interview had he been put on notice of the purpose of the search after reviewing the warrant. (Tr. VI at 78-79). Defense counsel argued that the legality of possessing and growing marijuana is a grey area, and Strickland might have not understood the consequences of admitting ownership of the grow operation. (*Id.*). However, Strickland did not testify. In addition, this does not appear to be the type of prejudice that has required suppression in the past.

The Ninth Circuit has held there is no prejudice unless the search would not have occurred or the search would been less abrasive had law enforcement served the warrant at the beginning of the search. *Williamson*, 439 F.3d at 1133. Here, Strickland has not argued that the execution of the search warrant was unduly abrasive, and there is no indication in the record that it was.

Further, Strickland clearly was aware of the potential criminal liability he faced for the grow operation as evinced by his refusal to further discuss the grow operation without first obtaining counsel. (Gov.'s Exh. 17 filed at Doc. 108, at approx. 14:30). Large, unlicensed, commercial marijuana grow operations like the one discovered at the Carefree Drive residence are, and have always been, illegal under both federal and Alaska state law.

The cultivation and possession of marijuana is illegal for all purposes under federal law. *See, e.g.*, *Wilson*, No. 14-15700, 2016 WL 4537376, at *11. Although Alaska constitutional law has protected the possession and cultivation of small amounts of marijuana within the home since the Alaska Supreme Court's 1975 decision in *Ravin v. State*, 537 P.2d 494, 503 (Alaska 1975), Alaska law has always

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 36 of 40

forbidden the unlicensed, commercial cultivation of marijuana. *See* Jason Brandeis,

*Ravin Revisited: Alaska's Historic Common Law Marijuana Rule at the Dawn of*

*Legalization*, 32 Alaska L. Rev. 309, 322 (2015).

At the time of the search, Alaska Ballot Measure 2 had taken effect,

legalizing the recreational use of marijuana and permitting licensed individuals to

grow and sell marijuana on a commercial scale. *Id*. However, both before and after

the enactment of Ballot Measure 2, the unlicensed possession of 25 or more

marijuana plants constitutes a felony offense under Alaska state law. *See id.*; *see*

*also* Alaska Stat. Ann. § 11.71.040(a)(3)(G). Strickland has not asserted that he held

either a commercial or medical marijuana grow license at the time of the search. To

whatever extent Alaska's marijuana laws can be characterized as a grey area, the

366 marijuana plants discovered at the Carefree Drive address were clearly being

cultivated in violation of Alaska and federal law.

For these reasons, the Court finds that the *Gannt* violation in this case does

not necessitate suppression because it was not committed in bad faith and did not

prejudice Strickland or any of the other defendants in this case. Accordingly,

suppression is inappropriate.

The Court however admonishes Agent Foreman to adhere to the holding in

*United States v. Gannt*, and provide a copy of the search warrant at the outset of a

search, after the scene has been secured and officer safety is assured, at least until

the apparent discrepancy between *United States v. Gannt* and *United States v.*

*Grubbs* is resolved.

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                        Page 37 of 40

### J. Violations of the Presentment Requirement Are Not Grounds for Suppression under *Hector*.

Assuming, *arguendo*, that the violation of *Gannt* was committed in bad faith or prejudiced Strickland during Agent Foreman's interrogation, the Court concludes under the Ninth Circuit's decision in *United States v. Hector* that suppression of the physical evidence in this case would be unwarranted because there is no causal connection between the failure to personally serve the warrant on Strickland and the discovery of the evidence seized from the Carefree Drive residence. 474 F.3d 1150.

In *Hector*, the police failed to serve a copy of the warrant on the defendant at the time of the search, and the district court suppressed the evidence seized under a pre-*Grubbs* decision holding that the failure to serve a search warrant at any time before, during or immediately after the search of a home was presumptively unreasonable and necessitated suppression. 474 F.3d at 1151-54. The Ninth Circuit reversed, concluding that, because there was no causal connection between the failure to serve the warrant and the discovery of the evidence, the evidence seized could not be considered a "'fruit of the fact' that the officers failed to present the warrant." *Id*. at 1155-56. The court acknowledged that, under the Supreme Court's decision in *Grubbs*, the only interest served by Rule 41(f)'s requirement that law enforcement serve a copy of the warrant on the occupants of the premises searched is to ensure the occupants of the legitimacy of the search. *Id*.

The Ninth Circuit however declined to address the question of whether the rule in *Gannt* had been effectively overruled by *Grubbs*, and instead concluded that

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                    Page 38 of 40

the causal connection between the failure to serve the warrant and the seizure of the evidence was non-existent and, therefore, the exclusion of evidence was unwarranted. *Id*. at 1155. The *Hector* court premised its holding on *Michigan v. Hudson*, in which the Supreme Court held that law enforcement's failure to comply with the knock-and-announce rule during the execution of a warrant did not require suppression because there is no causal connection between law enforcement's failure to knock and announce their presence before executing a search warrant on a home and the subsequent seizure of evidence from the home. *Id*. at 1154 (citing *Hudson v. Michigan*, 547 U.S. 586 (2006). Both *Hudson* and *Hector* are in turn rooted in the basic premise of the Fourth Amendment's exclusionary rule, under which evidence is only to be suppressed in cases where the evidence would not have come to light but for the illegal actions of the police. *See Hudson*, 547 U.S. at 592 (citing *Wong Sun v. United States*, 371 U.S. 471, 487–488 (1963)).

The Court concludes that assuming, *arguendo*, that the *Gannt* violation necessitated suppression under pre-*Grubbs* law, the suppression of the physical evidence in this case would be inappropriate under *Hector*.

/ / /

/ / /

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                    Page 39 of 40

# IV. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court

DENY Strickland and Burk's Motion to Suppress. (Doc. 46).

For the reasons set forth in Section III(C), *supra*, the defendant's request for

a *Franks* hearing is DENIED.


DATED this 11th day of October, 2016 at Anchorage, Alaska.

S/DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE


Due to the looming trial date of October 24, 2016, the Court has issued a
Final Report and Recommendation. Pursuant to D.Ak.L.M.R. 6(a), a party seeking
to object to this proposed finding and recommendation shall file written objections
with the Clerk of Court no later than **CLOSE OF BUSINESS, OCTOBER 17,
2016.** Failure to object to a magistrate judge's findings of fact may be treated as a
procedural default and waiver of the right to contest those findings on appeal.
*Miranda v. Anchondo, et. al*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit
concludes that a district court is not required to consider evidence introduced for the
first time in a party's objection to a magistrate judge's recommendation. *United
States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not
exceed **five (5) pages** in length, and shall not merely reargue positions presented
in motion papers. Rather, objections and responses shall specifically designate the
findings or recommendations objected to, the basis of the objection, and the points
and authorities in support. Response(s) to the objections shall be filed on or before
**CLOSE OF BUSINESS, OCTOBER 19, 2016.** The parties shall otherwise comply
with provisions of D.Ak.L.M.R. 6(a). **The shortened objection and response
deadlines are necessary due to the looming trial date. D.AK.L.M.R. 6(a)
authorizes the court to alter the standard objection deadlines.**

Reports and recommendations are not appealable orders. Any notice of
appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the
district court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

*United States v. Strickland, et al.*
3:15-cr-0088-SLG-DMS
Final R&R on Motion to Suppress                                              Page 40 of 40